## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PRECISION DUCT AND | ) | Case No:_____ |
| FABRICATION, LLC, | ) | |
| 182 N. Yale Avenue | ) | |
| Columbus, OH  43222, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHEET METAL WORKERS' | ) | |
| NATIONAL PENSION FUND, | ) | |
| c/o General Counsel | ) | |
| 3180 Fairview Park Drive, Suite 400 | ) | |
| Falls Church, VA  22042, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Precision Duct and Fabrication, LLC ("PDF" or "Company"), by and through its

attorney, brings this action to obtain a declaratory judgment to resolve a conflict as to whether

the Company is a successor-in-interest to Columbus Heating and Ventilating Company, Inc.

("CH&V") as claimed by the Sheet Metal Workers' National Pension Fund ("Defendant") for

the purpose of attempting to assert that the Company is liable for the withdrawal liability of

CH&V.

## I.   PARTIES

1.     PDF is a limited liability company organized and existing under the laws of the State of Ohio.  During its operation, it was engaged in the business of manufacturing and selling spiral ductwork from its location at 182 North Yale Ave., Columbus, Ohio.

2.     The National Pension Fund (the "Fund") is a multi-employer pension plan within the meaning of ERISA, Sections 3(2), (3) and (37), 29 U.S.C. Sections 1002(2), (3) and (37). The National Pension Fund is administered in Falls Church, Virginia.

## II.   JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.  This Court also has jurisdiction pursuant to Sections 502(e)(1), 4301(a)(1), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)(1), 1451(a)(1), and 1451(c).  This Court is authorized to enter declaratory relief pursuant to 28 U.S.C. Section 2201.

4.     Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Fund may be found in this District through its administration of benefits to participants in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) because the grounds giving rise to the Fund's demand for payment was made in and is substantially connected to this District.

## III.   BACKGROUND

### Columbus Heating and Ventilating Company, Inc.

5.     Upon information and belief,

    A.     Ohio Service Group, Inc. ("OSG") is the sole owner of the shares of CH&V and Synergy Mechanical ("Synergy").

    B.     The owners of OSG are Timothy Madrid, Tony Staten and Donald Skeens.

C.    In 2020, OSG, CH&V and Synergy had a long-term credit facility with PNC Bank. This credit facility was fully secured by the assets of OSG, CH&V and Synergy.

D.    The business of CH&V was the installation of HVAC systems in public projects and commercial buildings.

E.    As part of its business, CH&V operated a metal fabrication shop, the products of which were used exclusively for installation in projects for which CH&V had the related construction contract. CH&V did not sell fabricated metal work to other contractors, whether union or open-shop, to the general public or to supply houses.

F.    CH&V was signatory to a collective bargaining agreement with SMART 24. In general, CH&V employed over 100 tradesmen in its manufacture and installation of HVAC systems. As well, the shop utilized a substantial amount of equipment, including two coil lines, press brakes, a plasma machine, and numerous other large pieces of equipment and vehicles.

G.    In 2019 and 2020, CH&V had a number of significant subcontracts with another union mechanical contractor, Bruner Corp. ("Bruner"). These subcontracts represented 90 percent of CH&V's back-log. Over the period of 2018 through 2020, Bruner failed to make timely payment to CH&V on each and every of the outstanding subcontracts because Bruner had run out of working capital. The amount owed by Bruner to CH&V ultimately exceeded $4 Million.

H.    In 2020, the CH&V executives learned that in addition to the payment problems posed by the Bruner subcontracts, CH&V's CFO had not been paying the company's payroll tax obligations. This amounted to approximately $2.2 Million. This debt to the IRS remains outstanding.

I.    As a result of Bruner's non-payment on the outstanding subcontracts, CH&V experienced a significant working capital depletion and could not meet its own financial obligations over the course of 2020. In particular, as of September, 2020, CH&V had outstanding trade debt of $1,278,859 and back-taxes of $1,122,820.30.

J.    In the Fall of 2020, OSG, CH&V and Synergy similarly could not meet the covenants associated with the PNC credit facility. In particular, as of September, 2020, the companies owed PNC Bank $1,432,612.11 on the base credit facility and $102,455.12 on a separate line of credit. In or about the beginning of September, 2020, PNC declared OSG, CH&V and Synergy to be in default of the credit facility and demanded that the entities acknowledge the default and surrender all secured assets to PNC.

K       On September 21, 2020, OSG, CH&V and Synergy surrendered all assets of the companies to PNC Bank and ceased operations.  A true and accurate copy of the associated Surrender Agreement is attached hereto as Exhibit A.

L.      As of year ending March 31, 2020, OSG, CH&V and Synergy had a net worth of negative $2,696,232.

6.      PDF is an Ohio limited liability company.

7.      Neither Timothy Madrid, Tony Staten nor Don Skeens have had any ownership interest in PDF.

8.      The business of PDF was the manufacture of spiral duct and the sale of that material to the general public, open-shop contractors and supply houses.

9.      The business of PDF did not include the installation of duct work or any other HVAC systems or equipment.

10.     PDF did not sell duct or other HVAC system components to union contractors.

11.     PDF ceased commercial operations in September, 2022, due to an inability to gain or maintain market share.

### Sheet Metal Workers' National Pension Fund Claim
### And PDF's Efforts Made To Resolve The Claim

12.     By letter dated April 1, 2021, the Fund advised CH&V that it was assessing withdrawal liability in the amount of $3,387,452.35 against CH&V.  A true and accurate copy of this letter is attached hereto as Exhibit B.

13.     By letter dated February 14, 2022, the Fund advised PDF that it had reason to believe that PDF is a "successor" to CH&V.  A true and accurate copy of this letter is attached hereto as Exhibit C.

14.     PDF responded to the Fund's claim on March 21, 2022, by pointing out that there was no evidence to support any claim by the Fund that PDF was a successor to CH&V, that PDF

-4-

had no notice as to CH&V's withdrawal liability, and that that none of the factors under the substantial continuity doctrine were met.  A copy of this response is attached hereto as Exhibit D.

15.     There is no continuity of workforce and management between PDF and CH&V as PDF did not acquire any of the relevant SMART Local 24 members from CH&V and none of PDF's owners or managers were previous owners of, or employed by, CH&V.

16.     There is no continuity of facilities as between PDF and CH&V as PDF entered into an arms-length  market rate lease for the facility with the owner of the real property that had no affiliation with CH&V and, whereas CH&V occupied and utilized the entire facility for its operations, PDF utilized only a small portion of the facility with the balance thereof being subleased to multiple other unrelated companies.

17.     There is no continuity of operations between PDF and CH&V because CH&V was a union contractor that employed in excess of 100 tradesmen, including SMART 24 members, to manufacture and install ductwork only for its own installation on public and private commercial projects where it was the prime contractor or a subcontractor and it did not offer ductwork for sale to other entities.  In contrast, PDF had between 2-4 shop employees to manufacture spiral duct for sale only to non-union contractors, the general public and supply houses and performed no installation work.

18.     Subsequent to PDF's counsel's March 21, 2022, letter to the Fund, PDF has supplied the Fund with responses to specific inquiries demonstrating that none of the factors under the substantial continuity doctrine were met as to PDF and that PDF is currently out of business, without assets and has a negative net worth.

19.     Despite being provided with the information identified in Paragraphs 15 through 18 above, the Fund insists upon pursuing its claim that PDF is a successor to CH&V.

20.     There is no good faith basis for the claim by the Fund that PDF is a successor to CH&V.

## COUNT 1
## DECLARATORY JUDGMENT

21.     PDF repeats and incorporates the allegations of Paragraphs 1 through 20 of this Complaint as if fully set forth herein.

22.     PDF brings this claim for declaratory judgment under Fed. R. Civ. P. 57 and 28 U.S.C. Sections 2201 and 2202.

23.     The Fund has asserted that PDF is the successor of CH&V and upon that theory is responsible for the withdrawal liability that the Fund has asserted against CH&V.

24.     An actual, justiciable controversy exists between the parties which the Court can resolve with finality by declaring the rights of the parties.

WHEREFORE, PDF demands judgment against the Fund and requests the following relief:

A.      A declaratory judgment in PDF's favor that it is not a successor of CH&V and that PDF accordingly has no liability to the Fund for the withdrawal liability of CH&V.

B.      An award of attorneys' fees and costs.

Dated: March 16, 2023

Respectfully submitted,

*/s/ Michael W. Currie*
Michael W. Currie (0013100)
Currie & Associates LLC
3458 Lewis Centre Way
Grove City, Ohio 43123
614.581.3276
mike@currie-law.com

> *Trial Counsel for Plaintiff, Precision*
> *Duct and Fabrication, LLC*

**OF COUNSEL:**

Michael G. McNally (MN Bar #0389762)
Fox Rothschild LLP
Two22 Building
222 South 9th St., Suite 2000
Minneapolis, MN 55402
612.607.7000
MMcNally@FoxRothschild.com

# EXHIBIT A

## SETTLEMENT AND SURRENDER OF POSSESSION AGREEMENT

September 21, 2020

PNC Bank, National Association
PNC Equipment Finance
1900 East 9th Street, Locator B7-YB13-22-8
Cleveland, Ohio 44114
Attn: Joan M. Ware

Re: **Settlement and Surrender of Possession Agreement (the "Agreement") – Columbus Heating and Ventilating Company ("CHV"), Synergy Mechanical Contractors, Inc. ("SMC") and Ohio Service Group, Inc. ("OSG") (collectively, "Obligors")**

Ladies and Gentlemen:

Obligors hereby acknowledge that they are presently in default of certain loan documents executed by Obligors and PNC Bank, National Association and PNC Equipment Finance (collectively, "**Bank**"), as described in greater detail on attached **Exhibit A** (collectively, as each may be amended, restated or otherwise modified from time to time, and together with any and all documents, instruments and agreements related to, referenced in or executed with any of the foregoing, the "**Bank Loan Documents**").

Obligors also acknowledge that Bank has a properly perfected, first priority security interest in the assets owned by Obligors, including, without limitation, certain tooling, equipment, inventory and accounts receivable and the proceeds thereof. Therefore, in order to assist Bank's efforts to maximize its recovery, which maximization is in the direct interest of and benefit to Obligors, Obligors agree that Bank hereby has the right, power and privilege to repossess and collect all of its personal property collateral, including, without limitation, the property described on **Exhibit B-1** and **Exhibit B-2** attached hereto and made a part hereof, and the proceeds thereof (collectively, the "**Collateral**"), without the use of any judicial process, without any prior notice to the undersigned and without the opportunity for any prior judicial or other type of hearing. Obligors hereby expressly waive and renounce the right to any prior notice of any judicial or other type of hearing regarding the repossession and collection of any of the Collateral. Obligors hereby agree that Bank shall be entitled to apply the proceeds of the Collateral to Obligors' debt, in its sole and absolute discretion, and Obligors hereby waive any claims against Bank in respect of such application.

Obligors acknowledge and agree that the preparation of any of the Collateral for sale or disposition under the Uniform Commercial Code (the "**Code**") and to thereafter dispose of such Collateral by a public or private sale at any location designated by Bank shall constitute a commercially reasonable disposition of the Collateral.

Obligors shall take any and all actions of any kind or nature whatsoever, either directly or indirectly, that are necessary to assist Bank or its respective designees in taking possession of the Collateral, storing the Collateral on site, selling the Collateral and delivering the proceeds of the Collateral to Bank.  Obligors consent to the retention of a third-party chosen by or acceptable to Bank to undertake the foregoing actions relating to the disposition of the Collateral, to collect accounts receivable, and to undertake all actions reasonably requested by Bank to maximize its recovery.

Obligors hereby waive any rights that they might have under §9-623 of the Code (Ohio Revised Code §1309.623), or under any other applicable law, to redeem any of the Collateral. Obligors hereby waive any rights that they might have under §9-611 of the Code (Ohio Revised Code §1309.611) or other applicable law, to notice of the time or place of sale or other disposition or retention of the Collateral.

Obligors shall take any and all actions requested by Bank to assist Bank in its collection of accounts receivable, including those accounts receivable described on attached **Exhibit C** and, as may be requested by Bank, turn over such accounts receivable to facilitate the collection of same.

Obligors acknowledge, agree and consent to Bank exercising a setoff or hold with respect to any accounts held at Bank in the name of Obligors and applying any such funds to the obligations owing pursuant to the Bank Loan Documents.

Obligors hereby represent and warrant that they have no claims, counterclaims, setoffs, actions or causes of action, damages or liabilities of any kind or nature whatsoever, whether in law or in equity, in contract or in tort, whether now accrued or hereafter maturing (collectively, "Claims") against Bank or its respective direct or indirect parent corporation or any direct or indirect affiliates of such parent corporation, or any of the foregoing's respective directors, officers, employees, agents, attorneys and legal representatives, or the heirs, administrators, successors or assigns of any of them (collectively, "**Creditor Parties**") that directly or indirectly arise out of, are based upon or are in any manner connected with any Prior Related Event (defined below) or the Collateral. Effective as of the date of the execution and delivery of this Agreement, Obligors and all successors and assigns of Obligors, voluntarily release and forever discharge all Creditor Parties from any and all Claims, whether known or unknown, that directly or indirectly arise out of, are based upon or are in any manner connected with any Prior Related Event. "**Prior Related Event**" means any transaction, event, circumstance, action, failure to act, or occurrence of any type or sort, whether known or unknown, which occurred, existed, was taken, was permitted or begun in accordance with, pursuant to or by virtue of any of the terms of this Agreement, any of the Bank Loan Documents, or any transactions related hereto or thereto.

Obligors hereby represent and warrant that they have consulted, or has had the opportunity to consult, with their attorney before signing this Agreement and that the requisite corporate authority exists or has been obtained by Obligors to enter into this Agreement.

Obligors will surrender possession of the Collateral at such time and as otherwise directed by Bank, in its sole discretion, specifically to cooperate with Bank in its efforts to sell the Collateral to reduce the indebtedness and other obligations owed to Bank. If Bank, in its sole discretion, determines that recoveries will be maximized by the sale of the Collateral directly by Obligors (including the assignment of accounts receivable to Bank's designee), then Obligors agree to sell the Collateral to the ultimate purchaser and/or designee chosen or approved by Bank and to immediately deliver the sale proceeds to Bank. Nothing in this Agreement shall be construed as waiving or releasing Obligors of the obligations of Obligors with respect to any deficiency remaining after the sale of the Collateral.

In consideration for Obligors' actions and agreements as described herein (and provided that Obligors are not in default of the requirements of this Agreement or the Bank Loan Documents), PNC consents to the payment of those items described on attached **Exhibit D** and will release its hold on certain of Obligors' accounts, to the extent of the amount of such permitted payments, to facilitate same.

Very truly yours,

**COLUMBUS HEATING & VENTILATING COMPANY**

By: _____

Its: _Directore_____

**SYNERGY MECHANICAL CONTRACTORS, INC.**

By: _____

Its: _President_____

**OHIO SERVICE GROUP, INC.**

By: _____

Its: _President_____

# EXHIBIT B



SHEET METAL WORKERS NATIONAL PENSION FUND

April 1, 2021

Columbus Heating & Ventilation
Attn: Tim Madrid
182 N. Yale Ave.
Columbus, OH 43222

Re: ***Columbus Heating & Ventilation:  Delinquency Notice of Withdrawal
Liability to the Sheet Metal Workers' National Pension Fund***

Dear Mr. Madrid:

By letter dated November 19, 2020, Sheet Metal Workers' National Pension Fund (the "Fund")
informed Columbus Heating & Ventilation ("Columbus Heating") that it had affected a complete
withdrawal from the Fund on or about August 31, 2020, and that Columbus Heating owed the Fund
withdrawal liability in the amount of $3,387,452.35 payable in nineteen quarterly payments of
$203,360.73 followed by one installment of $2,404.26.  Section 4219(c)(2) of ERISA requires that
withdrawal liability be paid in accordance with the schedule set forth in this demand letter,
notwithstanding any request for review or arbitration of the determination of withdrawal liability
which may be sought.  According to the schedule set forth in the November 19, 2020 letter, Columbus
Heating' first payment of $203,360.73 was due January 1, 2021 and quarterly thereafter.  Columbus
Heating has failed to make the first payment under this schedule, which was due January 1, 2021.
Interest has accumulated on the unpaid installment in the amount of $3,786.44 for the missed
installment and will continue to accumulate from the date due through the date paid.  Payment in the
minimum amount of $207,147.17 must be made immediately.

The failure of Columbus Heating to correct this delinquency within sixty days of the receipt of
this letter will constitute a default within the meaning of § 4219(c)(5) of ERISA.  If Columbus Heating
defaults on its obligation to pay, the Fund can request immediate payment of the entire amount of the
withdrawal liability.  Accordingly, if payment in the amount of $209,710.55 is not received in this
office within sixty days of the receipt of this letter, the Trustees of the Fund will file suit against
Columbus Heating and any other trades or businesses under common control in the United States
District Court of the Eastern District of Virginia to collect the full amount of withdrawal liability, as
well as interest, liquidated damages, and attorneys' fees and costs.

If any questions arise regarding this matter, please call me at (703-739-7027) or email at
kanderson@smwnbf.org.

Sincerely,

Kenneth J. Anderson Jr.
Audit & Delinquency Manager

3180 Fairview Park Dr. Suite 400, Falls Church, VA 22042
(703) 739-7000 Fax (703) 683-0932 www.smwnpf.org

# EXHIBIT C



**Sheet Metal Workers'
National Pension Fund**

February 14, 2022

**VIA UPS GROUND**

Precision Duct and Fabrication, LLC
Attn: Paula Currie
182 Yale Avenue
Columbus, OH 43222

Michael W. Currie
10855 Campden Lakes Blvd.
Dublin, OH 43016

Re:  **Columbus Heating & Ventilating Company  – Withdrawal Liability**

Dear Mr. and Ms. Currie:

In accordance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Sheet Metal Workers' National Pension Fund (the "Fund") determined that Columbus Heating & Ventilating Company ("CH&V") effected a complete withdrawal from the Fund on or about August 31, 2020.  In the attached letters dated November 19, 2020 and April 2, 2021, the fund notified CH&V of the withdrawal liability assessment and its subsequent default.

By way of this letter, the Fund is providing notice that it has reason to believe that Precision Duct and Fabrication, LLC ("Precision") is a successor to CH&V and therefore jointly and severally liable for the withdrawal liability assessed against CH&V.  Accordingly, Precision is hereby notified that the Fund's demand for payment extends to Precision as well.

Precision has the right within 90 days after receipt of this notice to:

1. Ask the Fund to review any specific matter relating to its determination of the withdrawal liability and the schedule of payment;
2. Identify any inaccuracy in the determination of the amount of the unfunded benefits allocable to your company; and
3. Furnish any additional relevant information to the Fund.

You may send any request for review to the Fund in care of my attention at Sheet Metal Workers' National Pension Fund, 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042. If Precision submits a timely request for review, the Fund will, after thorough consideration of any matter raised, notify Precision in writing of its decision on the matter(s) on which review has

Precision Duct and Fabrication
February 14, 2022
Page 2

been requested. If Precision is not satisfied with the outcome of the review by the Fund, it may pursue arbitration of its dispute with the Fund as set forth in ERISA §4221. The right to arbitrate any determination made by the Fund concerning Precision's withdrawal liability will be lost unless Precision initiates arbitration within the 60-day period after the earlier of (a) 120 days after the date of Precision's request for review by the Fund, or (b) the date the Fund notifies Precision of its decision on the matter(s) raised in the request for review.

Because CH&V is confirmed to have received the Fund's attached letters, its time to request review has expired.

The law requires payment of quarterly installments to begin, notwithstanding any request for review or arbitration. Please send payment payable to the Sheet Metal Workers' National Pension Fund to the attention of Ken Anderson at 3180 Fairview Park Dr., Suite 400, Falls Church, VA 22042. If such payment is not made when due, interest on the unpaid amount shall accrue from the due date of the missed payment until the date that payment is made. Interest on delinquent payments shall be at the rate set by the Fund pursuant to ERISA §4219(c)(6).

We are also notifying Precision that because CH&V did not cure its failure to make any payments pursuant to the withdrawal liability assessment, the Fund may elect to file suit against Precision if either company does not begin jointly or separately making the interim withdrawal liability payments within 60 days of the date of this letter. In the event that such collection action becomes necessary, Precision may be obligated to pay to the Fund attorney's fees and costs incurred in the action in addition to the unpaid liability, interest thereon, and liquidated damages.

We thank you for your attention to our correspondence. If you have any questions or concerns, please contact me at (703) 739-7092 or tloving@smwnbf.org.

Sincerely,

Tearyn Loving
General Counsel

cc:    Ken Anderson, SMWNPF



**SHEET METAL WORKERS NATIONAL PENSION FUND**

November 19, 2020

Columbus Heating & Ventilation
Attn: Tim Madrid
182 N Yale Ave.
Columbus, OH 43222

Re:  Notice and Demand for Payment of Withdrawal Liability
     Sheet Metal Workers National Pension Fund

Dear Mr. Madrid:

We determined that Columbus Heating & Ventilation ("Columbus Heat") affected a complete withdrawal from the Sheet Metal Workers' National Pension Fund ("Fund"). In accordance with the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), we hereby notify you of the amount of Columbus Heat's withdrawal liability and schedule of payments. In addition, we hereby demand payment in accordance with the schedule.

According to our records, a complete withdrawal occurred on or about August 31, 2020. In accordance with MPPAA, we compute Columbus Heat's withdrawal liability to be $3,387,452.35. Columbus Heat and all other trades or businesses under common control are required to amortize this liability in nineteen (19) quarterly payments of $203,360.73 followed by one (1) quarterly payment of $2,404.26.

Payments are to be made in accordance with the enclosed schedule, even if a request for review under MPPAA is filed. Accordingly, Columbus Heat's first payment is due on or before January 1, 2021. If payment is not received on or before the date due, the matter will be referred to the Fund's legal counsel for collection of the overdue payment and interest. Interest on overdue payments will be assessed from the due date of the payment until the date paid.

Failure to begin payment of withdrawal liability as required may constitute a default, which will entitle the Fund to require immediate payment of the full amount of the withdrawal liability owed. In addition, the Fund will treat such a default as a delinquency. This

**SHEET METAL WORKERS NATIONAL PENSION FUND**

will result in the assessment of a liquidated damage fee of 20% of the delinquency, interest, and any court costs and attorney's fees incurred in collecting any such delinquency.

Under MPPAA, Columbus Heat has the right within 90 days after the receipt of this Notice, to:

1. Ask the Fund to review any specific matter relating to its determination of the withdrawal liability and the schedule of payments;
2. Identify any inaccuracy in the determination of the amount of the unfunded benefits allocable to your company; and
3. Furnish any additional relevant information to the undersigned.

Please be advised that although MPPAA provides for arbitral review of the calculation of Columbus Heat's withdrawal liability, your failure to timely and properly request arbitration under MPPAA may preclude you from ever challenging this calculation.

As noted above, the law requires payment of quarterly installments to begin, notwithstanding any request for review. Please send the payment (made payable to Sheet Metal Workers' National Pension Fund), to my attention at this office.

Sincerely,

Kenneth J. Anderson Jr.
Audit & Delinquency Manager

*Enclosures*

cc: SMW Local 24 (via email)
    Tearyn Loving (via email)

Exhibit I

**Sheet Metal Workers' National Pension Fund**
**Determination of Employer Withdrawal Liability Payments**
**For Withdrawals During the Plan Year Ending December 31, 2020**

| Year Ended | Unamortized Balance of Withdrawal Liability Pools | | | | 5-Year Total, Adjusted for Withdrawn Employers | Contributions | | Employer's Share of Unamortized Pools |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Basic Pools As of 12/31 | Reallocated Pools As of 12/31 | Affected Benefits Pools As of 12/31 | Total Pools As of 12/31 | Employers | Columbus Heating & Vent. | 5-Year Total | |
| 1996 | | | | | | 183,921.12 | | |
| 1997 | | | | | | 226,189.81 | | |
| 1998 | | | | | | 214,450.18 | | |
| 1999 | | | | | | 190,543.92 | | |
| 2000 | 13,311,673 | 141,460 | - | 13,453,133 | 1,049,198,648 | 175,293.44 | 990,398 | 12,699.18 |
| 2001 | 75,644,897 | 146,615 | - | 75,791,512 | 1,108,035,485 | 196,272.24 | 1,002,750 | 68,589.78 |
| 2002 | 104,351,751 | 113,214 | - | 104,464,965 | 1,156,086,641 | 307,871.12 | 1,084,431 | 97,990.09 |
| 2003 | 27,752,647 | 338,926 | - | 28,091,473 | 1,180,284,191 | 219,683.97 | 1,089,665 | 25,935.11 |
| 2004 | 97,480,733 | 1,117,703 | - | 98,598,436 | 1,193,749,349 | 180,358.12 | 1,079,479 | 89,160.20 |
| 2005 | 65,851,426 | 175,489 | - | 66,026,915 | 1,210,189,788 | 273,425.55 | 1,177,611 | 84,249.44 |
| 2006 | 230,921,001 | 618,832 | - | 231,539,833 | 1,275,299,752 | 262,615.10 | 1,243,954 | 225,848.76 |
| 2007 | 140,150,810 | 1,096,178 | - | 141,246,988 | 1,367,978,490 | 201,187.24 | 1,137,270 | 117,425.79 |
| 2008 | (74,992,010) | 280,211 | 271,558,371 | 196,846,572 | 1,498,738,835 | 152,318.67 | 1,069,905 | 140,593.53 |
| 2009 | 254,688,448 | 2,543,588 | 44,479 | 257,276,515 | 1,579,997,694 | 127,225.85 | 1,016,772 | 165,564.58 |
| 2010 | 305,946,689 | 5,051,761 | 38,081,622 | 349,080,072 | 1,618,194,282 | 201,677.72 | 945,025 | 203,862.57 |
| 2011 | 354,003,070 | 4,303,555 | 5,590,653 | 363,897,278 | 1,654,151,482 | 229,158.71 | 911,568 | 200,425.94 |
| 2012 | 44,775,685 | 5,571,470 | 110,139 | 50,457,294 | 1,689,780,634 | 163,778.07 | 874,159 | 233,031.02 |
| 2013 | 112,105,952 | 4,640,565 | 1,142,406 | 117,888,923 | 1,706,299,106 | 319,179.39 | 1,041,020 | 71,924.49 |
| 2014 | 464,154,663 | 9,951,938 | - | 474,106,601 | 1,791,923,116 | 236,973.36 | 1,150,767 | 304,469.73 |
| 2015 | 645,756,028 | 7,005,595 | - | 652,761,623 | 1,947,039,073 | 272,795.81 | 1,221,885 | 409,647.59 |
| 2016 | 541,148,519 | 624,030 | - | 541,772,549 | 2,112,433,865 | 306,293.70 | 1,299,020 | 333,157.68 |
| 2017 | 209,435,040 | 9,583,890 | - | 219,018,930 | 2,284,129,430 | 429,150.62 | 1,564,393 | 150,005.36 |
| 2018 | 333,738,332 | 670,685 | - | 334,409,017 | 2,491,259,424 | 437,183.96 | 1,684,397 | 225,833.12 |
| 2019 | 315,232,971 | 1,377,958 | - | 316,610,929 | 2,672,926,838 | 640,151.56 | 2,085,576 | 247,038.39 |
| | 4,861,458,225 | 55,252,663 | 316,527,870 | 5,033,238,558 | | | | |

Gross allocable amount of unfunded vested benefits   3,387,452.35
De minimis reduction
  A. Excess assessment (over $100,000)
  B. Lesser of 50,000 and 0.75% of UVB   50,000.00
  C. [B]-[A] not less than zero
Net allocable amount of unfunded vested benefits*   3,387,452.35

*Does not reflect any impact of any partial withdrawal,
limitation on annual payments or sale of assets*

**Exhibit II**

**Sheet Metal Workers' National Pension Fund**
**Determination of Employer Withdrawal Liability Payments**
**For Withdrawals During the Plan Year Ending December 31, 2020**

| Employer Name: | Columbus Heating & Vent - ▮▮▮ |
| Date of Withdrawal: | 8/31/2020 |
| Date of Notice: | 11/20/2020 |
| Net Withdrawal Liability Assessment: | $3,387,452.35 |

| Plan Year Ended 12/31 | Employer Contributions | Contribution Rate | Hours for Which Contributions Were Required | 3-Year Average Hours |
|---|---|---|---|---|
| 2010 | 201,678 | 2.25 | 89,634.54 | |
| 2011 | 229,159 | 2.41 | 95,086.60 | |
| 2012 | 163,778 | 6.74 | 24,299.42 | 69,673.52 |
| 2013 | 319,179 | 6.74 | 47,355.99 | 55,580.67 |
| 2014 | 236,973 | 2.95 | 80,329.95 | 50,661.79 |
| 2015 | 272,796 | 3.16 | 86,327.79 | 71,337.91 |
| 2016 | 306,294 | 8.83 | 34,687.85 | 67,115.20 |
| 2017 | 429,151 | 8.83 | 48,601.43 | 56,539.02 |
| 2018 | 437,184 | 4.73 | 92,427.90 | 58,572.39 |
| 2019 | 640,152 | 4.73 | 135,338.60 | 92,122.64 |
| 2020 | | 3.62 | | |

Payment Amount:

| a) Average hours during highest consecutive 3-year period: | 92,122.64 |
| b) Highest hourly contribution rate during 10-year period: | $8.83 |
| c) Annual payment:  ((a)x(b)) | $813,442.91 |
| d) Quarterly payment:  ((c)/4) | **$203,360.73** |

11/19/2020

**Exhibit III**

**Sheet Metal Workers' National Pension Fund**
**Schedule Of Employer Withdrawal Liability Payments**
Interest = 7.50%

| | | | | |
|---|---|---|---|---|
| Employer Name: | **Columbus Heating & Vent** | | | |
| Date of Withdrawal: | **8/31/2020** | | **100%** | |
| Net Withdrawal Liability Assessment: | **$3,387,452.35** | | **$3,387,452.35** | |

| Payment Number | Estimated Payment Date | Balance Owed | Quarterly Payment Amount | Principal Balance | Annual Interest | Cumulative Interest |
|---|---|---|---|---|---|---|
| 1 | January 1, 2021 | $3,387,452.35 | $203,360.73 | $3,184,091.62 | | $0.00 |
| 2 | April 1, 2021 | 3,184,091.62 | 203,360.73 | 2,980,730.89 | | 0.00 |
| 3 | July 1, 2021 | 2,980,730.89 | 203,360.73 | 2,777,370.16 | | 0.00 |
| 4 | October 1, 2021 | 2,777,370.16 | 203,360.73 | 2,574,009.43 | | 0.00 |
| 5 | January 1, 2022 | 2,767,060.14 | 203,360.73 | 2,563,699.41 | $193,050.71 | 193,050.71 |
| 6 | April 1, 2022 | 2,563,699.41 | 203,360.73 | 2,360,338.68 | | 193,050.71 |
| 7 | July 1, 2022 | 2,360,338.68 | 203,360.73 | 2,156,977.95 | | 193,050.71 |
| 8 | October 1, 2022 | 2,156,977.95 | 203,360.73 | 1,953,617.22 | | 193,050.71 |
| 9 | January 1, 2023 | 2,100,138.51 | 203,360.73 | 1,896,777.78 | 146,521.29 | 339,572.00 |
| 10 | April 1, 2023 | 1,896,777.78 | 203,360.73 | 1,693,417.05 | | 339,572.00 |
| 11 | July 1, 2023 | 1,693,417.05 | 203,360.73 | 1,490,056.32 | | 339,572.00 |
| 12 | October 1, 2023 | 1,490,056.32 | 203,360.73 | 1,286,695.59 | | 339,572.00 |
| 13 | January 1, 2024 | 1,383,197.76 | 203,360.73 | 1,179,837.03 | 96,502.17 | 436,074.17 |
| 14 | April 1, 2024 | 1,179,837.03 | 203,360.73 | 976,476.30 | | 436,074.17 |
| 15 | July 1, 2024 | 976,476.30 | 203,360.73 | 773,115.57 | | 436,074.17 |
| 16 | October 1, 2024 | 773,115.57 | 203,360.73 | 569,754.84 | | 436,074.17 |
| 17 | January 1, 2025 | 612,486.45 | 203,360.73 | 409,125.72 | 42,731.61 | 478,805.78 |
| 18 | April 1, 2025 | 409,125.72 | 203,360.73 | 205,764.99 | | 478,805.78 |
| 19 | July 1, 2025 | 205,764.99 | 203,360.73 | 2,404.26 | | 478,805.78 |
| 20 | October 1, 2025 | 2,404.26 | 2,404.26 | | | |
| Totals | | | **$3,866,258.13** | | **$478,805.78** | |

11/19/2020



**SHEET METAL WORKERS NATIONAL PENSION FUND**

April 1, 2021

Columbus Heating & Ventilation
Attn: Tim Madrid
182 N. Yale Ave.
Columbus, OH 43222

**Re:** *Columbus Heating & Ventilation: Delinquency Notice of Withdrawal Liability to the Sheet Metal Workers' National Pension Fund*

Dear Mr. Madrid:

By letter dated November 19, 2020, Sheet Metal Workers' National Pension Fund (the "Fund") informed Columbus Heating & Ventilation ("Columbus Heating") that it had affected a complete withdrawal from the Fund on or about August 31, 2020, and that Columbus Heating owed the Fund withdrawal liability in the amount of $3,387,452.35 payable in nineteen quarterly payments of $203,360.73 followed by one installment of $2,404.26. Section 4219(c)(2) of ERISA requires that withdrawal liability be paid in accordance with the schedule set forth in this demand letter, notwithstanding any request for review or arbitration of the determination of withdrawal liability which may be sought. According to the schedule set forth in the November 19, 2020 letter, Columbus Heating' first payment of $203,360.73 was due January 1, 2021 and quarterly thereafter. Columbus Heating has failed to make the first payment under this schedule, which was due January 1, 2021. Interest has accumulated on the unpaid installment in the amount of $3,786.44 for the missed installment and will continue to accumulate from the date due through the date paid. Payment in the minimum amount of $207,147.17 must be made immediately.

The failure of Columbus Heating to correct this delinquency within sixty days of the receipt of this letter will constitute a default within the meaning of § 4219(c)(5) of ERISA. If Columbus Heating defaults on its obligation to pay, the Fund can request immediate payment of the entire amount of the withdrawal liability. Accordingly, if payment in the amount of $209,710.55 is not received in this office within sixty days of the receipt of this letter, the Trustees of the Fund will file suit against Columbus Heating and any other trades or businesses under common control in the United States District Court of the Eastern District of Virginia to collect the full amount of withdrawal liability, as well as interest, liquidated damages, and attorneys' fees and costs.

If any questions arise regarding this matter, please call me at (703-739-7027) or email at kanderson@smwnbf.org.

Sincerely,

Kenneth J. Anderson Jr.
Audit & Delinquency Manager

3180 Fairview Park Dr. Suite 400, Falls Church, VA 22042
(703) 739-7000 Fax (703) 683-0932 www.smwnpf.org

# EXHIBIT D



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Two22 Building
222 South Ninth Street
Suite 2000
Minneapolis, MN 55402-3338
Tel (612) 607-7000  Fax (612) 607-7100
www.foxrothschild.com

MICHAEL G. MCNALLY
Direct No: 612.607.7094
Email: MMcNally@FoxRothschild.com

March 21, 2022

**VIA E-MAIL**
Tearyn Loving, General Counsel
Sheet Metal Workers' National Pension Fund
3180 Fairview Park Drive, Suite 400
Falls Church, VA 22042
tloving@smwnbf.org

Re:     **Precision Duct and Fabrication, LLC**

Dear Tearyn:

This Firm represents Precision Duct and Fabrication, LLC ("Precision").  This letter serves as Precision's response to the Sheet Metal Workers' National Pension Fund's ("NPF") letter dated February 14, 2022.

Precision disputes NPF's claim that it is a successor to Columbus Heating & Ventilating Company, Inc. ("CH&V") and further denies that it has any obligation to remit quarterly installments to NPF or to otherwise pay any amount of CH&V's withdrawal liability.  Additionally, Precision requests review of NPF's determination of the amount of withdrawal liability.

**Precision is not Obligated to Make Interim Payments**

The obligation to make interim payments under ERISA § 4219(c) applies to an "employer."  An employer means all "trades or businesses (whether or not incorporated) that are under common

A Pennsylvania Limited Liability Partnership

California     Colorado     Delaware     District of Columbia     Florida     Georgia     Illinois     Minnesota     Nevada
New Jersey     New York     North Carolina     Pennsylvania     South Carolina     Texas     Virginia     Washington



Tearyn Loving
March 21, 2022
Page 2

control."[1] Precision is not an "employer" within the meaning of § 4001 of ERISA, nor does NPF even allege that Precision is an "employer" as it relates to CH&V. Rather NPF claims that Precision is a successor to CH&V. There is no requirement under MPPAA that an alleged successor make interim payments.

Because the obligation to make interim payments only applies to an "employer" Precision is not required to make interim payments to NPF.

**Precision is not a Successor to CH&V**

NPF's letter states that "it has reason to believe that [Precision] is a successor to CH&V and therefore jointly and severally liable for the withdrawal liability assessed against CH&V." The basis for NPF's belief is unclear. Precision maintains that there is no evidence to support any claim by NPF that it is a successor to CH&V.

Courts have found it appropriate to impose withdrawal liability on a successor in circumstances where (1) the successor was on notice of its predecessor's liability, and (2) there is substantial continuity of identity in the business enterprises.[2]

Here, neither of the criteria are satisfied.

Precision had no notice as to CH&V's withdrawal liability, nor could it have discovered such withdrawal liability through reasonable care or diligence. Precision acquired a single piece of equipment following CH&V's lender's sale of certain collateral it repossessed. No reasonable due diligence, in connection with the purchase of a single piece of equipment, would have led to the discovery of CH&V's withdrawal liability.

Further, none of the factors under the substantial continuity doctrine are met.

As to the continuity of workforce and management, Precision did not acquire any of the relevant SMART Local 24 members from CH&V. None of Precision's owners or managers were previously owners of, or employed by, CH&V.

---

[1] 29 U.S.C. § 1301(b)

[2] *See e.g. Ind. Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.,* 884 F.3d 770, 777 (7th Cir. 2018) ("Successor liability under the MPPAA requires two distinct components: notice of the potential liability and substantial continuity of the business.")



Tearyn Loving
March 21, 2022
Page 3

Similarly, as to the continuity of facilities, Precision did not purchase CH&V's facilities. Precision entered into a lease with the owner of the property formerly occupied by CH&V. Our understanding is that CH&V previously occupied the entirety of the contiguous property, whereas Precision only occupies a small warehouse area, and the rest of the space formerly occupied by CH&V is now occupied by tenants other than Precision.

As to the equipment, in connection with CH&V's lender's repossession and sale of CH&V's tools and equipment, Precision acquired a single coil machine. The majority of the CH&V equipment was sold at public auction shortly after the assets were surrendered to the lender.

In regard to the continuity of customers, there is none. CH&V, as a signatory with SMART Local 24, manufactured and installed ductwork and ancillary sheet metal components pursuant to contracts with large general contractors, as a subcontractor to other signatory mechanical contractors, as well as to project end users, such as hospitals and other significant commercial construction projects. CH&V did not operate as a supply house and it did not sell ductwork to the industry. In contrast, Precision is a start-up company, the sole business of which is the manufacture of ductwork on a small scale. Precision operates as a ductwork supply house for non-signatory contractors and its customers are almost exclusively smaller contractors. Further, Precision does not sell material to contractors that are signatory with SMART Local 24. Local 24 signatory contractors who do not fabricate their own ductwork purchase it from other Local 24 signatories. A further significant distinction is that Precision does not perform any field work. Precision did not capture any of CH&V's customers.

In summary, our understanding is that CH&V was a large HVAC contractor that fabricated material and performed field work, employing in excess of one hundred (100) trades men and women. By contrast Precision has three (3) employees, operates a single coil machine, does not perform any installation of material it fabricates, and does not service any of CH&V's former customers.

The Fund's belief that Precision is a successor of CH&V is mistaken.

**Request for Review**

In its letter the Fund states that Precision has the right to request review of the determination of withdrawal liability. For the reasons set forth above Precision maintains that it is neither obligated to make interim payments, nor is it a successor of CH&V and therefore is not liable.



Tearyn Loving
March 21, 2022
Page 4

Without waiving any of the above, and in addition, Precision further requests review pursuant to ERISA § 4219(b)(2)(A) and Section 9(a) of the Fund's Rules and Regulations for Employer Withdrawal Liability.

First, Precision disputes the amount of the liability assessed and submits that the withdrawal liability must be reduced under ERISA § 4225(a).

It is our understanding that CH&V's withdrawal was as a result of the financial collapse of its business which resulted in its lender terminating its credit facility. All of CH&V's assets were then sold by to unrelated third-parties in arm's-length transactions. We also understand that in connection with this liquidation CH&V's liabilities far exceeded its assets. Based upon the circumstances, there is little doubt that CHV&'s financial records would reflect its liquidation or dissolution value was negative.

Under the statute, CH&V's withdrawal liability must be reduced to 30% of that liquidation value, or $0.00.

Even if Precision were a successor to CH&V, which Precision firmly disputes and denies, the amount the Fund could recover from Precision can be no greater than what it could have recovered from CH&V. Because CH&V's liability would have been limited by § 4225(a) to $0.00, the liability that can be recovered from Precision must also be $0.00.

Second, please review and advise of the basis for the Fund's determination that the present value of the Fund's unfunded vested plan benefits for withdrawal liability purposes is calculated using different discount rates than the Fund applies for other purposes. Please explain whether the rates and assumptions used by the Fund's actuary, in the aggregate, are reasonable and offer the actuary's best estimate of anticipated experience under the plan.

The interest rate assumption used by the Fund for funding purposes is 7.5%. This rate represents the actuary's best estimate of anticipated experience under the plan.

Precision accordingly requests that the Fund recalculate the present value of unfunded vested benefits for withdrawal liability purposes using the 7.5% rate the Fund uses for funding purposes.

Based upon the foregoing, Precision disputes the Fund's determination that it is a successor, that it is obligated to make interim payments, and of the amount of withdrawal liability. Precision requests that the Fund withdraw its demand, or in the alternative review the above and redetermine the amount of liability.



Tearyn Loving
March 21, 2022
Page 5

Nothing in this letter shall constitute an admission of any fact, liability or conclusion of law by Precision.  This letter is sent without waiving any defense or basis to dispute the assessment. Precision expressly reserves all rights, defenses, contentions and claims.

Very truly yours,

*s/ Michael G. McNally*

Michael G. McNally

MGM:mjbs


cc:     Mike Currie